UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BRIDGETTE ROULHAC,** ) | NO. EDCV 05-00669-MAN |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM OPINION AND ORDER |
| v. ) | |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of the** ) | |
| **Social Security Administration,** ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff filed a Complaint on August 3, 2005, seeking review of the denial by the Social Security Commissioner ("Commissioner")[1] of Plaintiff's claim for supplemental security income benefits ("SSI"). On September 9, 2005, the parties consented to proceed before the undersigned, pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on May 4, 2006, in which: Plaintiff seeks an order reversing the Commissioner's decision denying benefits and directing the

---

[1] Michael J. Astrue became the Commissioner of the Social Security Administration on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael Astrue should be substituted in place of Commissioner Joanne B. Barnhart as the Defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

payment of benefits or, alternatively, remanding the case for a new hearing; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed her application for SSI on October 12, 2001. (Administrative Record ("A.R.") 71-74.) Plaintiff claims to have been disabled since January 8, 2001, due to being HIV positive with complications and suffering from knee/back pain, herpes, fatigue, and depression. (A.R. 25, 71.) She has past relevant work experience as a food service worker and fast food cashier. (A.R. 25.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. On February 16, 2003, Plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Phillip Moulaison ("ALJ"). (A.R. 416-31.) On April 27, 2005, the ALJ denied Plaintiff's request for SSI, and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision. (A.R. 24-29, 8-10.)

**SUMMARY OF ADMINISTRATIVE DECISION**

In his April 27, 2005 written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the filing date of her application. (A.R. 28.) The ALJ found that Plaintiff has a "severe" impairment, as she is HIV positive, but she

does not have an impairment or combination of impairments listed in, or medically equivalent to an impairment listed in, Appendix 1, Subpart P, Regulation No. 4.  (A.R. 29.)  The ALJ further found that Plaintiff's other impairments, *i.e.*, her mood disorder secondary to her medical condition and cocaine abuse, are "non-severe."  (*Id.*)  In addition, the ALJ found that Plaintiff's testimony regarding her impairments was not totally credible.  (*Id.*)

The ALJ found that Plaintiff has the following residual functional capacity:

> [Plaintiff] retains the residual functional capacity for light work.  She is limited to standing and walking for six hours in an eight hour day.  The number of hours she can sit is without any restrictions.  She requires no assistive devices.  She is limited to lifting 20 pounds frequently and 40 pounds occasionally.  There are no limitations on bending, stooping, or crouching.  There are no limitations on reaching, handling, feeling, grasping, and fingering.  There are no visual, communicative, or workplace environmental limitations.[2]

(A.R. 28, 29.)  Based on this residual functional capacity assessment, the ALJ found that Plaintiff could perform her past relevant work as a

---

[2] This residual functional capacity assessment falls between the exertional requirements for "light" and "medium" work.  "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 416.967(b), 404.1567(b).  "Medium work" involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).

food service worker and fast food cashier. (A.R. 29.) Accordingly, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act. (*Id.*)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y. of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more

than one rational interpretation of the evidence. *Id*. at 1041; *see also* Morgan v. Comm'r. of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges three issues.  First, Plaintiff contends that the ALJ failed to consider the opinion of Dr. Divy Kikani, a psychologist who examined Plaintiff at the request of the Commissioner.  Second, Plaintiff contends that the ALJ improperly found that she does not have a "severe" mental impairment.  Third, Plaintiff contends that the ALJ failed to consider properly the statements submitted by Sharon Brown, her friend.  (Joint Stip. at 2.)  The Court will consider the first two issues together, as they are interrelated.

**A.   The ALJ's Conclusion That Plaintiff's Alleged Mental Impairment Is Not "Severe" Constitutes Error.**

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on [a claimant's] ability to work.'" Smolen, 80 F.3d at 1290 (citing Social Security Ruling 85-28 and Yuckert v. Bowen, 841 F.2d 303 (9th Cir. 1988)); 20 C.F.R. §§ 404.1521, 416.921 ("[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."); *see also* Bustamante v. Massanari, 262 F.3d 949, 955-56 (9th Cir. 2001)(ALJ's finding that claimant's mental impairment was not severe was not supported by substantial evidence because every mental

health professional who examined claimant found significant mental problems). The "severity" requirement is merely "a *de minimis* screening device to dispose of groundless claims." Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001)(citing Smolen, 80 F.3d at 1290). "[A] claim may be denied at step two only if . . . a finding [that the relevant impairments are not medically severe] is *clearly established by medical evidence*." Social Security Ruling 85-28 (emphasis added).

In describing the evidence pertaining to Plaintiff's claimed mental impairment, the ALJ stated:

> With regard to mental impairments, the records of [the] California Department of Corrections show that as of February 19, 2003, [Plaintiff] was stable on medications. Mental status examination was completely normal, with [Plaintiff] happy and talkative. (Exhibit 7F). Dr. Elder stated on March 20, 2003 and July 23, 2003, that [Plaintiff] had depression and possible schizophrenia. (Exhibits 10F and 16F).

(A.R. 27.)

Plaintiff contends that the ALJ erred by failing to discuss Dr. Kikani's January 21, 2002 report, which indicates that her mental impairment is "severe." (Joint Stip. at 3-4.) She further contends that the record, as a whole, establishes that she has a "severe" mental impairment, and the ALJ erred by failing to find any functional limitations arising from this impairment. (Joint Stip. at 7.)

In rendering his finding regarding Plaintiff's mental impairment, the ALJ primarily relied upon Exhibit 7, which encompasses three pages of treatment notes from Dr. Lawrence, Plaintiff's treating physician at the California Department of Corrections ("CDC"), covering the period from August 2001, to February 2003. (A.R. 243-45.) In these notes, Dr. Lawrence noted that Plaintiff was taking Wellbutrin and Seroquel, and that she was "stable on meds." (A.R. 243 -- February 19, 2003 progress notes, A.R. 244 -- November 13, 2002 progress notes.) In describing her mental status, he noted that she was "completely normal, happy, [and] talkative" (A.R. 244 -- January 9, 2003 progress notes) and exhibited goal-directed thinking, good grooming, normal intelligence, and good insight and judgment (A.R. 245 -- July 25, 2002 progress notes).

In addition, the ALJ cited Exhibits 10F and 16F, the March 20, 2003 and July 23, 2003 reports of Dr. Harvey Elder, one of Plaintiff's treating physicians. (A.R. 329-30, 363-64.) In his March 20, 2003 report, in response to a question asking for a description of Plaintiff's "functional level," Dr. Elder noted that Plaintiff had a Global Assessment of Functioning ("GAF") of 60,[3] had a "limited ability to care for [herself]," and was "depressed." (A.R. 329.) In response to the same question in his July 23, 2003 report, Dr. Elder noted that: "[Plaintiff] has problems with chronic fatigue, weakness, concentration, diarrhea, lower back pain, depression, [and] possible [schizophrenia]." (A.R. 363.) In describing the objective findings supporting the

---

[3] A GAF of 51-60 shows moderate symptoms, such as those which would affect speech, or moderate difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders Text Revision ("DSM"), 34 (4th ed. 2000).

limitations he found, Dr. Elder noted Plaintiff's "fatigue" and "inability to concentrate fully," and he further observed that Plaintiff exhibited "findings/indications of a diagnosed mental impairment" of "depression" and "possible [schizophrenia]."  (A.R. 364.)

Aside from the evidence cited by the ALJ, the record contains other relevant evidence bearing directly on Plaintiff's mental impairment.  As Plaintiff points out, the ALJ's finding pertaining to her mental impairment does not discuss the January 21, 2002 report completed by Dr. Kikani, a consultative physician.  After examining Plaintiff and performing a mental status examination, Dr. Kikani diagnosed Plaintiff with:  mood disorder, secondary to the medical condition; rule out mood disorder, not otherwise specified; rule out psychoactive substance (cocaine) induced mood disorder; rule out psychoactive substance (cocaine) induced organic mental disorder; and cocaine abuse versus dependence.  (A.R. 208.)  He assessed her with a GAF of 50,[4] and noted that Plaintiff has impaired judgment and memory span "for recent events."  (*Id*.)  In setting forth her mental limitations, Dr. Kikani stated:  1) "[c]oncentration, persistence and pace at the present time are moderately impaired"; 2) "[Plaintiff] may have problems following and carrying out complex instruction" but "can follow simple instructions and can avoid normal hazards"; 3) "[Plaintiff has] moderate impairment in [her] ability to interact normally with co-workers, supervisors and [the] public"; 4) "[Plaintiff has] moderate impairment in [her] ability to persist at the normal work situation under customary

---

[4] A GAF of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)."  DSM at 34.

work pressure"; and 5) "[Plaintiff may have] moderate to marked episodes of emotional deterioration at the normal work situation, under customary work pressure." (A.R. 209.)

In conclusion, Dr. Kikani observed that, "[f]rom the psychiatric point of view, [Plaintiff] is moderately psychiatrically disabled from the underlying psychiatric condition, which, in my opinion, is in reaction to the medical condition and also secondary to her problem related to psychoactive substance abuse, mostly crack cocaine." (A.R. 209.) Dr. Kikani based his report on Plaintiff's description of her condition, as well as "the available information supplied in th DPSS records." (A.R. 206.)

In addition, the record contains a March 1, 2002 Physician Statement completed by Dr. Shier, one of Plaintiff's treating physicians at San Bernardino County Public Health. In responding to a question requesting a description of any difficulties in Plaintiff's ability to maintain social functioning, Dr. Shier noted that Plaintiff had "chronic fatigue," "depression," and "[probable] schizophrenia." (A.R. 228.) He further noted that Plaintiff has an "inability to concentrate fully," and her "fatigue leads to some weakness." (A.R. 229.)

The record also contains a November 11, 2001 Initial Psychiatric Evaluation at the Parole Outpatient Clinic, Toni Barbee, LCSW, a staff social worker, who diagnosed Plaintiff with "cocaine induced psychotic disorder with hallucinations, in remission," and assessed her with a GAF of 60. (A.R. 205.) Barbee further noted that: Plaintiff's short-term and long-term memory "appeared to be intact"; her insight is "good"; and

her judgment is "fair." (*Id.*)

Here, substantial evidence undermines the ALJ's finding that Plaintiff does not have a "severe" mental impairment. The ALJ's brief discussion of the evidence pertaining to Plaintiff's mental impairment does not fairly represent the significance of this impairment and the limitations arising from it, as reflected in the record. For instance, although Dr. Elder's reports indicate that Plaintiff suffers from depression and possible schizophrenia, as the ALJ acknowledges, his reports show more significant symptoms and limitations than the ALJ described in his brief summary of this evidence. Specifically, Dr. Elder noted that Plaintiff's mental impairment renders her unable to concentrate fully -- a limitation which clearly would impact Plaintiff in the workplace. The ALJ fails to mention this limitation, much less provide specific and legitimate reasons for rejecting it. *See* Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)(When the ALJ rejects the opinion of a treating physician, even if it is contradicted, the ALJ may reject that opinion only by providing specific and legitimate reasons for doing so, supported by substantial evidence in the record); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)(it is error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion).

Other evidence, which the ALJ wholly failed to discuss, further suggests that the ALJ erroneously concluded that Plaintiff's mental impairment is not "severe." As Plaintiff correctly notes, Dr. Kikani opined that Plaintiff has limitations (*e.g.*, limited concentration, persistence, and pace; limited ability to interact with other people;

10

moderate to marked episodes of emotional deterioration; and limited ability to carry out complex instructions) that would impact her ability to function in the workplace and clearly suggests that Plaintiff's mental impairment is "severe."

Defendant's argument -- that the ALJ was not required to consider Dr. Kikani's January 21, 2002 report, because Plaintiff's protective filing date is January 17, 2003, and she would not be able to receive benefits until after that date -- is unpersuasive. Plaintiff has alleged an onset date of January 9, 2001, and although she filed a prior SSI application on September 18, 2001, that application was denied on November 15, 2001, well before Dr. Kikani's January 21, 2002 report. (A.R. 24.) The fact that the ALJ considered other evidence preceding Plaintiff's January 17, 2003 protective filing date further diminishes Defendant's argument.[5] Therefore, as with Dr. Elder's report, the ALJ's failure to consider the limitations set forth in Dr. Kikani's report, much less provide specific and legitimate reasons for rejecting them, constitutes error. Lester, 81 F.3d at 830. Furthermore, Dr. Shier, like Dr. Edler and Dr. Kikani, found that Plaintiff has limitations in her ability to concentrate, which the ALJ also erred by failing to discuss. (A.R. 229.) And, while GAF scores may not be determinative of disability, the GAF score of 50 found by Dr. Kikani, as well as the GAF scores found by others (*i.e.*, the GAF of 60 found by Dr. Elder and

---

[5] Even assuming this evidence fell outside the relevant period of disability, such evidence may be highly relevant, especially where the impairment is episodic or progressive. See Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989)(reports from 1983 and 1984 used to assess onset of claimant's disabling back impairment in 1985); see also Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989)(pre-onset diagnoses of mental disease was properly considered, because the claimant's condition was progressive in nature).

Barbee), suggest significant symptoms indicative of a "severe" impairment.

Moreover, in rendering his ultimate finding that Plaintiff's mental impairment is not "severe," the ALJ improperly relied on Dr. Lawrence's CDC treatment notes. Although Dr. Lawrence's CDC treatment notes indicate that Plaintiff is "stable" on anti-depressant medication and report that she exhibited normal intelligence, good insight, and good judgment, Dr. Lawrence was never asked to opine specifically as to any potential limitations that Plaintiff might experience in the workplace, such as concentration difficulties.[6]

In sum, the record as a whole, including the treating records from Dr. Elder and Dr. Shier, as well as Dr. Kikani's consultative report, demonstrates that Plaintiff's mental impairment would have "more than a minimal" effect on her ability to function in the work place. Smolen, 80 F.3d at 1290; Social Security Ruling 85-28. Thus, the ALJ's finding at Step Two that Plaintiff has no "severe" mental impairment is not based on substantial evidence. See Edlund, 253 F.3d at 1158 (ALJ erred by finding that claimant had no "severe" mental impairment based on his improper rejection of the uncontradicted opinion of examining

---

[6] While not specifically discussed by the ALJ, there is an April 18, 2003 Psychiatric Review Technique form, completed by Dr. S. Jenkins-Phelps, a state agency physician, who found that Plaintiff's mental impairment is "not severe." (A.R. 332.) In addition, Dr. K. Gregg, a state agency physician, noted on this form that he "reviewed all of the evidence in file and [this assessment] is affirmed as written." (Id.) However, this evidence appears to be at odds with the treating and examining evidence and, thus, should be accorded little, if any, weight. See Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996)(ALJ properly rejected doctors' psychological evaluations because they were contained in check-off forms and lacked any explanation of their bases).

psychologist who expressed doubts of the reliability of the claimant's test scores but nonetheless found that the claimant had several mental "fair" limitations functioning in the workplace).

Accordingly, the ALJ's finding regarding Plaintiff's claimed mental impairment constitutes reversible error.

**B.    The ALJ Should Consider The Lay Witness Statements On Remand.**

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). An ALJ may "properly discount lay testimony that conflict[s] with the available medical evidence." Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984). When, however, a lay witness testifies about a claimant's symptoms, which may affect the claimant's ability to work, such testimony is competent evidence and, therefore, cannot be disregarded without comment. *Id*.

Plaintiff contends that the ALJ erred by failing to consider the statements made by her friend, Ms. Brown. (Joint Stip. at 10-11.) In her January 11, 2002 Daily Activities Questionnaire, Ms. Brown stated that Plaintiff: does not see her family often and has few friends; has problems remembering; is easily irritated; and "[exhibits] problems in getting along with people and it seems to be getting worse." (A.R. 105-

10.)

As this case is being remanded so that the ALJ can reconsider the severity of Plaintiff's mental impairment, and Ms. Brown's statements regarding Plaintiff's limitations and symptoms are relatively brief (*see* A.R. 105-10), the ALJ should reconsider Ms. Brown's statements on remand prior to rendering his ultimate determination regarding Plaintiff's disability.

**C.    Remand Is Required.**

Here, remand is appropriate to allow the ALJ the opportunity to correct the above errors. *See* McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

**CONCLUSION**

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.  Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 8, 2007

                                                  /s/
                               MARGARET A. NAGLE
                      UNITED STATES MAGISTRATE JUDGE